IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SANDRA SCHILLING, et al.,

    Plaintiffs,

v.

    Case No. 2: 06-CV-487
    JUDGE EDMUND A. SARGUS JR.
    Magistrate Judge Mark R. Abel

INTERIM HEALTHCARE OF THE
UPPER OHIO VALLEY, INC., et al.

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the Plaintiffs' Second Motion for Partial Summary Judgment.[1] (Doc. #85.) For the reasons that follow, the motion is GRANTED.

### I.

Plaintiffs Sandra Schilling, Charles Schilling, John Schilling, and Janet Boice filed this action against Defendant Interim Healthcare of the Upper Ohio Valley ["UOV"], to recover employer-sponsored health benefits under the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1001, et seq.[2] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiffs' cause of action arises under a federal statute.

Plaintiffs filed a Motion for Partial Summary Judgment on February 21, 2007, seeking judgment on the successor liability claim against Defendants Diane Hunter ("Hunter") and

---

[1] Plaintiffs only seek judgment on the claim for successor liability; Plaintiffs' substantive ERISA claims are not addressed or affected by this Opinion.
[2] This Court previously entered default judgment against Defendants UOV, Health Protection Plan, and Lance Blankenship, the President and sole shareholder of UOV. (Order 2/9/2007, Doc. #51.)

Interim Healthcare of Southeast Ohio ["SEO"]. Hunter was the vice-president of UOV and is the current President and sole shareholder of the successor entity, SEO; Plaintiffs seek judgment against Hunter in her capacity as President and shareholder of SEO. Defendants also previously moved for summary judgment. (Doc. #33 and #34.) On September 17, 2007, the Court concluded that summary judgment in favor of either party was premature, but that the application of the theory of successor liability was appropriate. (Doc. #81.) At the time, however, the facts related to SEO and Hunter's knowledge of UOV's benefits liabilities were not sufficiently developed through discovery. (Doc. #81.) The one factual dispute preventing summary judgment at that time, and the only issue now before the Court, is whether Defendant Diane Hunter had sufficient notice and knowledge of the unpaid medial benefits to be a "successor" liable under the theory of successor liability.

Hunter joined UOV as an employee in 1993; she and her husband purchased 15% of the shares of UOV in 1996 for $25,000. Hunter worked as director of health care operations from 1996 through 2003. In 2002, UOV switched from a fully-insured health plan for its employees to a self-insured plan and hired Diversified Group Administrators to administer claims. UOV withheld premiums from participating employees' paychecks and held them in a segregated account. Claims were paid using the segregated premium account; if claims exceeded the premiums, the company would pay claims from its operating funds. In the summer of 2004, the company stopped paying claims without explanation. By December 2004, outstanding claims exceeded $340,000.

In the summer of 2004, Hunter attempted to buy out UOV's owner, Lance Blankenship, to start her own franchise, but Blankenship refused. In December 2004, Hunter formed a new corporation, SEO, and purchased the assets of UOV from Blankenship for $50,000. On

December 22, 2004, Hunter and Blankenship signed an Asset Purchase Agreement and Hunter paid Blankenship $25,000. On January 1, 2005, SEO began operations as a virtual continuance of UOV. On April 6, 2005, Hunter paid Blankenship the remaining $25,000 due under the APA. As stated above, the remaining issue in this case is whether Hunter knew the extent of UOV's unpaid employee medical claims when she purchased UOV's assets in December, 2004, and is liable for those debts under the theory of successor liability.

## II.

The procedure for considering whether summary judgment is appropriate is found in Fed. R. Civ. P. 56(c). This section provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that parties case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles

3

in "new era" summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

Plaintiffs argue that Defendants SEO and Diane Hunter are liable for UOV's debts as a successor to UOV. Defendants contend that they cannot be held liable for Plaintiffs' unpaid medical bills, asserting that Hunter did not know the precise extent of the liability stemming from UOV, and that UOV had the means to pay the outstanding medical claims.

In *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac,* 920 F.2d 1323 (7th Cir. 1990), a pension fund sued a successor corporation for contributions by its predecessor corporation. The court held that successor liability applies in the ERISA context, and identified the following factors to consider in deciding whether a successor entity is liable for the debts of the predecessor:

4

> (1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been sufficient continuity in the business operations of the predecessor and successor.
>
> [The first two factors are "critical"] because of our belief that it would be inequitable to hold a successor liable when it was unable to take the liability into account in negotiating the acquisition price or when the predecessor was capable of paying and merely attempted to externalize the liability onto another party... When the successor company knows about its predecessor's liability, knows the precise extent of that liability, and knows that the predecessor itself would not be able to pay a judgment obtained against it, the presumption should be in favor of successor liability.

*Id.* at 1327 (quoting *EEOC v. Vucitech*, 842 F. 2d 936, 945 (7th Cir. 1988)). As in this case, the successor corporation in *Artistic Furniture* had purchased the assets, and not the stock of the predecessor corporation.

Several courts in the Sixth Circuit have applied successor liability in ERISA cases. In *Bennett v. Gilbert*, No. 1:97-CV-964, 1998 U.S. Dist. LEXIS 16804 (W.D. Mich. September 17, 1998), the court analyzed the factors set out in *Artistic Furniture*, noting that successor liability promotes "Congressional intent to protect [ERISA] plan participants and their beneficiaries." *Id.* at *5. The court in *Zawlocki v. Rama Tech, LLC*, No. 03-60159, 2005 U.S. District LEXIS 33170, *12 (E.D. Mich. December 9, 2005), stated:

> In determining whether a new company is a successor to the old, the focus is on the totality of the circumstances of a given situation. Factors such as whether the new company has "acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973) (analyzing successor liability for purposes of labor obligations). Under this approach, factors examined include: "Whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987) (discussing successor employer's obligation to bargain with the union). No one factor is dispositive. *Id.*

This Court previously held that there was sufficient continuity in the business operations from UOV to SEO to establish successor liability. (Doc. #81 at 7.) Additionally, the Court found that Hunter did have some knowledge of the unpaid medical benefits, but because no depositions had been taken, the extent of Hunter's knowledge had not been fully developed in the record. (*Id.*)

On October 23, 2007, Hunter testified at deposition that on December 22, 2004, the date of the Asset Purchase Agreement, she knew that UOV had over $340,000 in unpaid medical claims and she knew that UOV did not have the ability to pay those claims. (Hunter Depo. at 44.) Hunter learned in the summer of 2004 that the employees' medical claims were not being paid by UOV, and she was aware that the situation affected all employees participating in the UOV health plan. (*Id.* at 38-39, 43-44.) On September 13, 2004, UOV held a special meeting to discuss the unpaid medical claims. Hunter attended and participated in that meeting. Hunter also knew that Blankenship, the owner of UOV, had unsuccessfully applied for a loan to cover the unpaid medical claims. (*Id.* at 56.) With full knowledge of these liabilities, Hunter created SEO and purchased UOV's assets in the Marietta and Athens, Ohio offices, including UOV's physical assets, supplies, patient lists, and related intangibles.

The Court concludes that no genuine issue of material fact exists based on Defendant Hunter's testimony. Hunter was aware of the exact amount of unpaid medical claims at the time she purchased UOV assets, and she knew that UOV did not have the ability to pay those claims. Considering the totality of the circumstances and the record as a whole, the Court concludes that each of the elements is met to impose successor liability on SEO. The business of UOV and SEO is essentially the same, the former employees of UOV are now employed by SEO doing the same jobs in the same working conditions, and SEO has the same the core customers as UOV.

For these reasons, the Court **GRANTS** Plaintiffs' Second Motion for Partial Summary Judgment and enters judgment against Defendants Diane Hunter and SEO on Plaintiffs' claim for successor liability.

**IT IS SO ORDERED.**

6-9-2008
**DATE**

**EDMUND A. SARGUS, JR**
**UNITED STATES DISTRICT JUDGE**